**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LARRY KLAYMAN
7050 W. Palmetto Park Rd
Boca Raton FL 33433

              Plaintiff,

v.

HON. NEOMI RAO
c/o 333 Constitution Ave NW
Washington DC 20001

    and

HON. ROBERT L. WIKLINS
c/o 333 Constitution Ave NW
Washington DC 20001

    and

HON. LAURENCE H. SILBERMAN
c/o 333 Constitution Ave NW
Washington DC 20001

    and

HON. COLLEEN KOLLAR-KOTELLY
c/o 333 Constitution Ave NW
Washington DC 20001

    and

HON. TANYA S. CHUTKAN
c/o 333 Constitution Ave NW
Washington DC 20001

    and

HON. SRI SRINIVASAN
c/o 333 Constitution Ave NW
Washington DC 20001

    and

**COMPLAINT FOR INJUNCTIVE AND
OTHER EQUITABLE
RELIEF**

HON. KAREN LECRAFT HENDERSON
c/o 333 Constitution Ave NW
Washington DC 20001

 and

HON. JUDITH W. ROGERS
c/o 333 Constitution Ave NW
Washington DC 20001

 and

HON. DAVID S. TATEL
c/o 333 Constitution Ave NW
Washington DC 20001

 and

HON. PATRICIA A. MILLETT
c/o 333 Constitution Ave NW
Washington DC 20001

 And

HON. CORNELIA T.L. PILLARD
c/o 333 Constitution Ave NW
Washington DC 20001

 and

HON. GREGORY G. KATSAS
c/o 333 Constitution Ave NW
Washington DC 20001

 and

HON. JUSTIN R. WALKER
c/o 333 Constitution Ave NW
Washington DC 20001

 and

HON. KETANJI BROWN JACKSON
c/o 333 Constitution Ave NW
Washington DC 20001

and

HON. HARRY T. EDWARDS
c/o 333 Constitution Ave NW
Washington DC 20001

   and

HON. DOUGLAS H. GINSBURG
c/o 333 Constitution Ave NW
Washington DC 20001

   and

HON. DAVID B. SENTELLE
c/o 333 Constitution Ave NW
Washington DC 20001

   and

HON. A. RAYMOND RANDOLPH
c/o 333 Constitution Ave NW
Washington DC 20001

          Defendants.

## I.    INTRODUCTION

Plaintiff LARRY KLAYMAN ("Mr. Klayman") brings this action against HON. NEOMI RAO, HON. ROBERT L. WIKLINS, HON. LAURENCE H. SILBERMAN, HON. COLLEEN KOLLAR-KOTELLY, HON. TANYA S. CHUTKAN, HON. SRI SRINIVASAN, HON. KAREN LECRAFT HENDERSON, HON. JUDITH W. ROGERS, HON. DAVID S. TATEL, HON. PATRICIA A. MILLETT, HON. CORNELIA T.L. PILLARD, HON. GREGORY G. KATSAS, HON. JUSTIN R. WALKER, HON. KETANJI BROWN JACKSON, HON. HARRY T. EDWARDS, HON. DOUGLAS H. GINSBURG, HON. DAVID B. SENTELLE, and HON.

A. RAYMOND RANDOLPH for injunctive and other equitable relief for egregious and blatant violations of his constitutional and other legal rights.

## II.    JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction).

2.      Venue is proper pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b)(2), (3) a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and Defendants are subject to personal jurisdiction in this District.

## III.    PARTIES

### <u>Plaintiff</u>

3.      LARRY KLAYMAN is an individual, natural person, who at all material times was and is a citizen of Florida.

### <u>Defendants</u>

4.      HON. NEOMI RAO ("Judge Rao") is on information and belief an individual and a citizen of the District of Columbia. She is a judge at the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit").

5.      HON. ROBERT L. WILKINS ("Judge Wilkins") is on information and belief an individual and a citizen of the District of Columbia. He is a judge at the D.C. Circuit.

6.      HON. LAURENCE SILBERMAN ("Judge Silberman") is on information and belief an individual and a citizen of the District of Columbia. He is a judge at the D.C. Circuit.

7.      HON. COLLEEN KOLLAR-KOTELLY ("Judge Kotelly") is on information and belief an individual and a citizen of the District of Columbia. She is a judge at the U.S. District Court for the District of Columbia.

8.      HON. TANYA S. CHUTKAN ("Judge Chutkan") is on information and belief an individual and a citizen of the District of Columbia. She is a judge at the U.S. District Court for the District of Columbia.

9.      HON. SRI SRINIVASAN ("Judge Srinivasan") is on information and belief an individual and a citizen of the District of Columbia. He is the Chief Judge of the D.C. Circuit).

10.     HON. KAREN LECRAFT HENDERSON ("Judge Henderson") is on information and belief an individual and a citizen of the District of Columbia. She is a judge at the D.C. Circuit.

11.      HON. JUDITH W. ROGERS ("Judge Rogers") is on information and belief an individual and a citizen of the District of Columbia. She is a judge at the D.C. Circuit.

12.     HON. DAVID S. TATEL ("Judge Tatel") is on information and belief an individual and a citizen of the District of Columbia. He is a judge at the D.C. Circuit.

13.     HON. PATRICIA A. MILLET ("Judge Millet") is on information and belief an individual and a citizen of the District of Columbia. She is a judge at the D.C. Circuit.

14.     HON. CORNELIA T.L. PILLARD ("Judge Pillard") is on information and belief an individual and a citizen of the District of Columbia. She is a judge at the D.C. Circuit.

15.     HON. GREGORY G. KATSAS ("Judge Katsas") is on information and belief an individual and a citizen of the District of Columbia. He is a judge at the D.C. Circuit.

16.     HON. JUSTIN R. WALKER ("Judge Walker") is on information and belief an individual and a citizen of the District of Columbia. He is a judge at the D.C. Circuit.

17.     HON. KETANJI BROWN JACKSON ("Judge Jackson") is on information and belief an individual and a citizen of the District of Columbia. She is a judge at the D.C. Circuit.

18.     HON. HARRY T. EDWARDS ("Judge Edwards") is on information and belief an individual and a citizen of the District of Columbia. He is a judge at the D.C. Circuit.

19.     HON. DOUGLAS H. GINSBURG ("Judge Ginsburg") is on information and belief an individual and a citizen of the District of Columbia. He is a judge at the D.C. Circuit.

20.     HON. DAVID B. SENTELLE ("Judge Sentelle") is on information and belief an individual and a citizen of the District of Columbia. He is a judge at the D.C. Circuit.

21.     HON. A. RAYMOND RANDOLPH ("Judge Randolph") is on information and belief an individual and a citizen of the District of Columbia. He is a judge at the D.C. Circuit

## IV.     STANDING

22.     Mr. Klayman has standing to bring this action because he has been directly affected, harmed, and victimized by the unlawful conduct complained herein. His injuries are proximately related to the conduct of Defendants, each and every one of them, jointly and severally.

## V.      FACTS

23.      This case centers around the unconstitutional and other illegal actions of Defendants, each and every one of them, acting in concert, in not just violating their oath of office as federal judges but worse violating Mr. Klayman's rights and discriminating against him in *Klayman v. Judicial Watch, Inc., et al*, 19-7105 (D.C. Cir.) (the "Appellate Proceeding"). This case was an appeal from a case before Judge Kotelly in this Court styled *Klayman v. Judicial Watch, Inc., et al,* 06-cv-670 (D.D.C.)(the "Lower Court Proceeding").

24.     During the Lower Court Proceeding, which lasted about sixteen (16) years, Judge Kotelly committed numerous highly prejudicial, intentional, and/or reckless manifest errors which resulted in a highly flawed and outrageous jury verdict against Mr. Klayman in the sum of

$2.8 million dollars. This was subsequently appealed to the D.C. Circuit. These highly prejudicial and manifest errors are set forth in detail in Appellant's Initial Brief and Appellant's Reply Brief which are incorporated herein by reference. <u>Exhibit 1</u>. These highly prejudicial manifest errors include, but are not limited to:

    a.  Allowing highly prejudicial, inflammatory statements and an irrelevant court order into evidence, in contradiction of both the Federal Rules of Evidence as well as the parol evidence rule.

    b.  Entering an overly broad, draconian sanctions order preventing Mr. Klayman from introducing evidence or calling witnesses at trial.

    c.  Usurping and extinguishing the fact-finding role of the jury, as provided for in the Seventh Amendment to the Constitution, by weighing competing affidavits to grant partial summary judgment to Judicial Watch with regard to Mr. Klayman's (1) Lanham Act claims, (2) rescission claim, and (3) defamation claims.

    d.  Usurping and extinguishing as provided for in the Constitution the fact-finding role of the jury by weighing competing affidavits to grant partial summary judgment on Judicial Watch's counterclaim for repayment of personal expenses when Mr. Klayman submitted a sworn affidavit countering each and every claimed expense by Judicial Watch.

    e.  Orally reading jury instructions that were erroneous, confusing, and highly prejudicial to Mr. Klayman, refusing to provide other jury instructions that would have stated the correct law and prevented the confusion, and then

failing to disclose any written instructions that were provided to the jury, if any.

f.   Failing to require authentication of documents submitted by Judicial Watch that purported to show "confusion" with regard to Judicial Watch's trademark infringement and related claims.

g.   Failing to provide a jury instruction that a few instances of alleged confusion, notwithstanding that there were no authenticated and admissible  documentary evidence  to show such confusion,  do not constitute trademark infringement, in contravention of well-established case law.

h.   Failing to remit the damage award based on the actions of non-parties and the false representations to the jury by witnesses and counsel for Judicial Watch.

i.   Entering judgment on the jury verdict where Judicial Watch clearly failed to prove that Mr. Klayman took and used donor information owned solely by Judicial Watch, but rather was owned by American Target Advertising.

25.     These highly prejudicial manifest errors are fully set forth in detail in Appellant's Initial Brief and Appellant's Reply Brief, which are attached hereto as <u>Exhibit 1</u> and incorporated herein by reference.

26.     Among these highly prejudicial errors were clear cut violations of Mr. Klayman's sacrosanct due process rights, as guaranteed to him under the Fifth and Fourteenth Amendments. These highly prejudicial manifest errors deprived Mr. Klayman of meaningful and actual access to the courts to litigate his claims. These highly prejudicial errors enabled Judge Kotelly to determine the outcome of Mr. Klayman's case alone, taking it out of the hands of the jury, and causing Mr. Klayman's case to be decided not on the facts and the law, but on Judge Kotelly's

personal dislike for and extrajudicial bias and prejudice toward Mr. Klayman. These due process violations include, but are not limited to:

(a) Spending approximately one hour orally reading jury instructions to the jury, many of which instructions contained misstated law, and then refusing to provide documentation of any written instructions that were provided to the jury, if any. This is a due process violation on two fronts: (1) if no written jury instructions were provided to the jury, it is impossible to expect a jury of laypersons to remember and accurately apply over one hour's worth of oral instructions, which would have led to a clearly flawed jury verdict and (2) if written jury instructions were provided, Judge Kotelly's refusal to file or even provide a final copy to Mr. Klayman strongly suggests that she had something to hide in the form of inaccurate written jury instructions having been provided.

(b) Usurping and extinguishing the fact-finding role of the jury by weighing competing affidavits to grant partial summary judgment on Judicial Watch's counterclaim for repayment of personal expenses when Mr. Klayman submitted a sworn affidavit countering each and every claimed expense by Judicial Watch. This is a violation of Mr. Klayman's due process rights because it denied him his right to have a jury of his peers serve as the finder of fact on his claims.

(c) Entering an overly broad, draconian sanctions order preventing Mr. Klayman from introducing evidence or calling witnesses at trial, and subsequently refusing to give the jury an instruction informing them of this sanction,

leaving the jury with the false impression that Mr. Klayman simply had no evidence or witnesses to support his claims.

27.     At the D.C. Circuit, a three-judge panel consisting of Judge Rao, Judge Wilkins, and Judge Silberman further compounded the highly prejudicial manifest errors of the Lower Court in fully affirming the jury verdict from the Lower Court Proceeding. In doing so, the three judge panel not only mistakenly, intentionally, and/or recklessly failed to reverse clear errors by Judge Kotelly, but it also made new highly prejudicial errors of its own. It appears that the three-judge panel's opinion, penned by Judge Rao, was an attempt to protect a fellow female jurist in Judge Kotelly of which she and the others felt a kinship.

28.     It is apparent from the three-judge panel's opinion that was it intended to protect Judge Kotelly, and it is likely that they were colluding with her. An egregious example is that the three-judge panel, unprompted and gratuitously wrote that Judge Kotelly had done a "commendable" job in administering the case. This flies in the face of the cold, hard fact that this case took sixteen (16) years to try. This is not commendable in any way.

29.     Importantly, the three-judge panel clearly did not take the time in good faith  to actually conduct a bona fide review of the voluminous record, as it simply ignored Mr. Klayman's well documented arguments, and completely failed to address others that showed prima facie incontrovertible error by Judge Kotelly, such as her and their failure to account for the parol evidence rule, or her decision to grant partial summary judgment on the issue of alleged personal expenses owed to Judicial Watch, despite Mr. Klayman having provided a sworn affidavit countering each and every claimed expense, to name just a few by way of example.

30.     Mr. Klayman therefore had no choice but to seek Petition for Rehearing En Banc to try to set the record straight and correct the numerous highly prejudicial manifest errors that had occurred.

31.     Given the extremely voluminous record at the Lower Court level, which was unsurprising given the fact that it took sixteen (16) years to reach trial, and the fact that there were numerous highly prejudicial errors that needed to be remedied, Mr. Klayman moved for leave to file a 25-page Petition for Rehearing En Banc—a mere ten excess pages. This motion was filed on August 18, 2021.

32.     This was an eminently reasonable request, given again the voluminous record and the number of issues involved, and Mr. Klayman had a good faith basis to operate under the premise that such a basic and reasonable request would be granted. However, nine days elapsed from the filing of his motion, and only on August 27, 2021 at 12:23 p.m.—the day before Mr. Klayman's Petition was due to be filed—did the D.C. Circuit rule that no additional pages would be allowed. This malicious abuse of discretion was intended to "sandbag" Mr. Klayman, compromise his rights to be fully heard, and thus caught him off-guard and he had to scramble to prepare a 15-page Petition.

33.     Mr. Klayman subsequently timely filed two versions of his Petition for Rehearing En Banc—a fully compliant 15-page version, as well as a 25-page version accompanied by a Motion for En Banc Panel to Consider 25-Page Petition for Rehearing En Banc and Motion for Reconsideration by the Full Court. These encapsulate and set forth the numerous prejudicial and manifest errors made by the three-judge panel, and are attached hereto as Exhibit 2 and are incorporated herein by reference. The highly prejudicial and manifest errors by the three-judge panel include *inter alia*, but are hardly limited to:

a.  Failing to reverse the Lower Court's error of letting in highly inflammatory, and completely irrelevant testimony, and completely disregarding the fact that the Lower Court ignored the parol evidence rule.

b.  Failing to reverse the jury verdict with regard to Judicial Watch's trademark infringement claims, which were the result of unauthenticated inadmissible hearsay being admitted into evidence to prove likelihood of confusion, and the application of the incorrect standard necessary to show likelihood of confusion and any trademark or related infringement. In doing so, the three-judge panel admitted that there have been unreversed and precedential decisions by courts within the D.C. Circuit which have held that likelihood of confusion requires an "appreciable number of consumers," *Am. Ass'n for the Advancement of Sci. v. Hearst Corp.*, 498 F. Supp. 244 (D.D.C.1980), but then still applying a much lower standard in contravention of this case law.

c.  Failing to reverse the Lower Court's grant of summary judgment with regard to misuse of Mr. Klayman's likeness and being.

d.  Failing to set aside the jury verdict and judgment with regard to alleged access to Judicial Watch's donor list.

j.  Failing to reverse the Lower Court's usurping of and thus extinguishing the fact-finding role of the jury by weighing competing affidavits to grant partial summary judgment on Judicial Watch's counterclaim for repayment of personal expenses when Mr. Klayman submitted a sworn affidavit countering each and every claimed expense by Judicial Watch.

34.     These highly prejudicial and manifest errors are again set forth fully in Mr. Klayman's petitions for rehearing en banc, which are attached hereto as <u>Exhibit 2</u> and incorporated herein by reference.

35.     Among these highly prejudicial errors were clear cut violations of Mr. Klayman's sacrosanct due process rights, as guaranteed to him under the Fifth and Fourteenth Amendments. These highly prejudicial errors deprived Mr. Klayman of meaningful and actual access to the courts to litigate his claims and extinguished his constitutional and other legal rights. These highly prejudicial errors show that the three-judge panel did not actually consider the appellate record and apply the relevant law, and make their ruling based on the facts and the law, but instead based on their personal feelings towards Mr. Klayman and their desire to protect one of their own, Judge Kotelly, as well as to harm Mr. Klayman financially with a $2.8 million dollar flawed verdict. These due process violations include, but are not limited to:

> (a) Failing to reverse the jury verdict with regard to Judicial Watch's trademark infringement and related claims, which were the result of unauthenticated inadmissible hearsay being admitted into evidence to prove likelihood of confusion, and the application of the incorrect standard necessary to show likelihood of confusion. In doing so, the three-judge panel admitted that there have been unreversed precedential decisions by courts in this Circuit and elsewhere  which have held that likelihood of confusion requires an "appreciable number of consumers," *Am. Ass'n for the Advancement of Sci. v. Hearst Corp.*, 498 F. Supp. 244 (D.D.C.1980), but then still applying a much lower standard in contravention of this case law. This is a due process violation because it denies Mr. Klayman meaningful access to the appellate

courts, as he presented clear, unreversed case law in his favor, which the three-judge panel simply ignored.

36.     Then, finally, on September 15, 2021, Mr. Klayman' s Petition for Rehearing En Banc was denied via a *per curiam* order by all of the Defendants, excluding Judge Edwards, Judge Ginsburg, Judge Sentelle, and Judge Randolph, along with his Motion to Consider 25-Page Petition for Rehearing En Banc. This *per curiam* order contained no legal reasoning or analysis, rendering it impossible for Mr. Klayman to know what issues to address when he takes this matter up to the Supreme Court on Petition for Writ of Mandamus and/or Certiorari. By including all of the members of the three judge panel, but excluding other judges on the D.C. Circuit,  in the review of Mr. Klayman's Petition for Rehearing En Banc, and  the resulting  per curiam order, this was intended to prejudice Mr. Klayman's right to an en banc review of the prejudicial manifest errors and opinion of the three judge panel.

37.     Pursuant to the Internal Operating Procedures of the D.C. Circuit, a vote sheet is transmitted to "all other active judges of this Court" which necessarily would have included Judge Edwards, Judge Ginsburg, Judge Sentelle, and Judge Randolph. These four Defendants are not part of the panel that denied Mr. Klayman's Petition, and therefore have abdicated their responsibility, contrary to their oath of office, to review the Petition for Rehearing En Banc and cast a vote, and thus they are also included in this complaint as defendants.

38.     The fact that it only took Defendants eleven (11) business days to deny Mr. Klayman's Petition for Rehearing En Banc, despite the extremely voluminous record, clearly shows that Defendants simply "rubber stamped" the three-judge panel and did not take any time to even read, review, digest, or consider Mr. Klayman's detailed and compelling arguments.

39.     Indeed, it would have been impossible for the Defendants to render a decision in just eleven (11) business days if they had actually reviewed the record and considered Mr. Klayman's arguments, even assuming that they had no other cases to work on (which is obviously not the case), simply given the extremely voluminous record.

40.     This is especially evident considering the fact that it took Defendants nine (9) days including weekends just to simply deny Mr. Klayman's motion for excess pages.

41.     Thus, from the timing alone, it is incontrovertible that Defendants in bad faith and in severe and blatant violation of constitutional and other legal rights gave Mr. Klayman's Petition for Rehearing zero (0) consideration. This is a clear violation of Mr. Klayman's due process rights because it denies him fair, meaningful, and non-discriminatory access to the appellate system, as it is clear that the en banc panel did not actually consider his arguments, and instead simply "rubber stamped" the three-judge panel's prejudicial and manifestly fatally flawed opinion.

42.     Furthermore, Mr. Klayman had filed an independent action in this Court relief under Fed. R. Civ. P. 60 and asking that the Lower Court judgment be set aside. *Klayman v. Judicial Watch, Inc.*, 1:19-cv-2604 (D.D.C.) based on fraud and other misconduct. This matter was assigned to Judge Chutkan.

43.     On September 22, 2019, Judge Chutkan stayed this matter pending resolution of the Appellate Proceeding. However, on February 16, 2021, Judge Chutkan reversed course and precipitously and inexplicably dismissed this action, well before the resolution of the Appellate Proceeding.

44.     Mr. Klayman respectfully asked Judge Chutkan via a motion if she had any "*ex parte*" communications with Judge Kotelly, which most likely explained her precipitous and

contradictory decision to dismiss the action without even giving Mr. Klayman an opportunity to submit any type of brief, much more allow a collateral appeal of the judgment to proceed pursuant to a conclusion as per her earlier stay order. Judge Chutkan has refused to give any substantive answer, giving rise to the strong inference that Judges Chutkan and Kotelly did, in fact, collude and act in concert to deny Mr. Klayman his constitutional and other legal rights.

45.     On information and belief, each and every one of the Defendants have communicated and worked together in collaboration to create and cause the manifest and grave injustice that has occurred. This has resulted from their personal animus towards and dislike for Mr. Klayman, as he has been very openly critical of federal judges in the Lower Court and its D.C. Circuit, particularly in the highly politized and toxic environment of the District of Columbia, as he wrote in his book "It Takes A Revolution: Forget the Scandal Industry!," which was dedicated to Thomas Jefferson. This greatest of Founding Fathers and presidents opposed Article III federal judges, as unelected, life tenured and thus unaccountable to We the People, predicting that they would in effect become despots and tyrants. This book was published on October 27, 2020, before the three-judge panel and en banc panel ruled, and it was widely advertised nationally and internationally months in advance of that by Post Hill Press and other publishers and distributors.

46.     The Defendants' dislike if not animus for Mr. Klayman is no secret. At a hearing in an unrelated matter where Mr. Klayman served as counsel, *Arpaio v. Zucker et al*, 18-cv-2894 (D.D.C.), the Honorable Royce Lamberth of the Lower Court and a judge in this D.C. Circuit revealed to Mr. Klayman and those who were in the audience, "I haven't had you here in a long time. It's a pleasure to have you again. I know some judges don't say that to you, but I will say it." <u>Exhibit 3</u>. This shows that even Judge Lamberth knew of the dislike if not animus that many

of his colleagues on the lower and higher courts in the D.C. Circuit had and continue to have for Mr. Klayman.

47.     However, respectfully, it is not Defendants' job to simply brush off and dismiss their duties as federal judges that for whatever reason they do not want to do, whether it be due to personal dislike of and animus toward the Appellant, Mr. Klayman, or for other reasons. Defendants were appointed to perform their duties of applying the law to the facts, regardless of any personal biases. This is required by the oath of office for federal judges:

> I do solemnly swear that I will administer justice **without regard to persons**, and do equal right to the poor and to the rich, and that I will impartially discharge and perform all the duties incumbent upon me as judge under the Constitution and laws of the United States. So help me God. 28 U.S.C. § 453 (emphasis added).

48.     Mr. Klayman has thus been severely harmed by the Defendants, as his due process rights pursuant to the Fourteenth Amendment of the Constitution and the Fifth Amendment to the Constitution have been severely violated, all with the intent to harm him by effectively attempting to bankrupt him and his family with a fatally flawed and manifestly wrong $2.8 million dollar verdict. On information and belief, Defendants believe that this will effectively put Mr. Klayman and his public interest advocacy, writings and other professional activities out of business, shielding them from more harsh criticism and potential litigation.

49.     Mr. Klayman therefore respectfully requests that this matter be transferred to another District Court where he is admitted, either the U.S. District Courts for the Southern or Middle Districts of Florida or the U.S. District Court for the Northern District of Texas, as this case will necessarily hinge upon members of this Court ruling on their own misconduct and violation of Plaintiff's constitutional and other legal rights, which creates a strong conflict of interest. Transfer to an impartial venue is therefore necessary in the interest of Mr. Klayman's due process and other rights, as well as the interests of justice in general.

**FIRST CAUSE OF ACTION**
*Civil Action for Deprivation of Rights*
*Against All Named Defendants*
**Fourteenth Amendment Due Process**

50.     Mr. Klayman repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

51.     Defendants' actions and omissions, each and every one of them acting in concert as joint tortfeasors, constituted a violation to Mr. Klayman constitutional rights secured by the Due Process clause of the Fourteenth Amendment.

52.     Defendants denied Mr. Klayman due process by failing to review the record, failing in good faith to even consider Mr. Klayman's arguments, and simply "rubber stamping" each other's' highly flawed and prejudicial orders.

53.     Defendants denied Mr. Klayman due process by taking away meaningful access to the legal system, taking away his ability to meaningfully seek appeal, and taking away his right to have his cases actually heard and considered by the judicial system.

54.     Defendants' actions were intentional, malicious, willful, wanton, and in gross and reckless disregard of Mr. Klayman's constitutional rights.

55.     Mr. Klayman prays that the $2.8 million dollar judgment rendered at the Lower Court Proceeding, and it's affirmance by the D.C. Circuit be vacated and this matter be reheard and re-tried before an unbiased and neutral judge, as well as such other equitable relief as is deemed just and proper.

**SECOND CAUSE OF ACTION**
*Civil Action for Deprivation of Rights*
*Against All Named Defendants*
**Fifth Amendment Due Process**

56.    Mr. Klayman repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

57.    Defendants' actions and omissions constituted a violation to Mr. Klayman constitutional rights secured by the Due Process clause of the Fifth Amendment.

58.    Defendants denied Mr. Klayman due process by failing to review the record, failing to consider in good faith Mr. Klayman's arguments, and simply "rubber stamping" each other's highly flawed and prejudicial orders.

59.    Defendants denied Mr. Klayman due process by taking away meaningful access to the legal system, taking away his ability to meaningfully seek appeal, and taking away his right to have his cases actually heard and considered by the judicial system.

60.    Defendants' actions were intentional, malicious, willful, wanton, and in gross and reckless disregard of Mr. Klayman's constitutional rights.

61.    Mr. Klayman prays that the $2.8 million dollar judgment rendered at the Lower Court Proceeding and affirmed by the D.C. Circuit be vacated and this matter be reheard and re-tried before an unbiased and neutral judge, as well as such other equitable relief as is deemed just and proper.

**THIRD CAUSE OF ACTION**
*Civil Action for Deprivation of Rights*
*Against All Named Defendants*
*First Amendment Violation*

62.    Mr. Klayman repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

63.    Defendants' actions and omissions, each and every one of them acting in concert as joint tortfeasors, constituted a violation to Mr. Klayman constitutional rights secured by the First Amendment.

64.     Defendants believed that their misconduct and violation of Mr. Klayman's constitutional and other legal rights , as set forth above, will effectively put Mr. Klayman and his public interest advocacy, writings and other professional activities out of business, shielding them from more harsh criticism and potential litigation.

65.     Defendants' attempted to silence Mr. Klayman is a violation of his rights of free speech under the First Amendment.

66.     Defendants' actions were intentional, malicious, willful, wanton, and in gross and reckless disregard of Mr. Klayman's constitutional rights.

67.     Mr. Klayman prays that the $2.8 million dollar judgment rendered at the Lower Court Proceeding and affirmed by the D.C. Circuit be vacated and this matter be reheard and re-tried before an unbiased and neutral judge, as well as such other equitable relief as is deemed just and proper.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment against each of the Defendants, jointly and severally, for declaratory and preliminarily and permanent injunctive relief, and any other further relief the Court deems just and proper, for the prejudicial, intentional, reckless, illegal, unconstitutional and malicious acts of the Defendants, each and every one of them, jointly and severally, against Mr. Klayman, which are and continue to be designed to severely harm him and his family, and subject him to potential bankruptcy, therefore eliminating him as a public interest advocate who has been and continues to be critical of many in the federal judiciary, particularly in and on the highly politicized, toxic, vindictive, and compromised D.C. Circuit.

Dated: September 21, 2021                    Respectfully submitted,


                                              */s/ Larry Klayman*
                                             Larry Klayman
                                             KLAYMAN LAW GROUP, P.A.
                                             7050 W. Palmetto Park Rd
                                             Boca Raton, FL, 33433
                                             Email: leklayman@gmail.com

                                             *Plaintiff Pro Se*