UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LARRY E. KLAYMAN**, <br><br> Plaintiff, <br><br> v. <br><br> **THE HONORABLE NEOMI RAO**, et al., <br><br> Defendants. | Case No. 21-cv-02473 (CRC) |

## MEMORANDUM OPINION

Larry E. Klayman, proceeding *pro se*, filed this action against the judges of the U.S. Court of Appeals for District of Columbia and two judges of the U.S. District Court for the District of Columbia, alleging violations of his rights under the Due Process Clause and the First Amendment. The claimed "unconstitutional and illegal actions" of the defendants occurred during the course of two prior related cases involving Klayman, Klayman et al. v. Judicial Watch, Inc., et al., No. 06-cv-670 (D.D.C.) ("Judicial Watch I") and Klayman et al. v. Judicial Watch, Inc., et al., No. 19-7105 (D.C. Cir.) ("Judicial Watch Appeal"). See Compl. ¶¶ 23–24. For the reasons explained below, this Court will dismiss this action *sua sponte*. Klayman's claims are barred in their entirety, either by absolute judicial immunity or by collateral estoppel, and this Court lacks jurisdiction to grant any of the relief Klayman seeks.

I.  **Background**

   A. Prior Litigation

This case arises from an earlier lawsuit between Klayman and the organization he founded in 1994, Judicial Watch. In short, Klayman left the helm of Judicial Watch in 2003. The relationship between Klayman and the organization then deteriorated further, leading to a series of lawsuits that have now spanned nearly 20 years.

   *1. Judicial Watch I*

In 2003, after his resignation from Judicial Watch, Klayman sued the organization asserting breach of his severance agreement and violations of the Lanham Act. Judicial Watch responded with counterclaims of the same variety. See Klayman v. Jud. Watch, Inc., 6 F.4th 1301, 1307–09 (D.C. Cir. 2021). This litigation proceeded before The Honorable Colleen Kollar-Kotelly for approximately sixteen years. Compl. ¶ 24. During the proceedings, Klayman filed numerous discovery and pretrial motions, including five motions for Judge Kollar-Kotelly's recusal. See Judicial Watch I, 6-cv-670-CKK, ECF Nos. 298, 345, 414, 587, 606 (recusal motions); ECF Nos. 76, 126, 146, 156, 226, 275. (motions to quash subpoenas, discovery motions, and motion for partial summary judgment). Judge Kollar-Kotelly granted partial summary judgment to Judicial Watch. Id., ECF Nos. 318, 319. The remainder of Klayman's claims and Judicial Watch's counterclaims were presented to a jury, which returned a $2.3 million dollar verdict against Klayman. Judicial Watch I, No. 6-cv-670-CKK, 2019 WL 1244079, at *31 (D.D.C. Mar. 18, 2019). Klayman filed several motions under Rules 50, 59, and 60 to alter the judgment, to grant a new trial, and for relief from judgment, all of which were unsuccessful. See Docket, No. 6-cv-670-CKK, ECF Nos. 571, 587, 603, 604, 608.

   *2. Appeal of Judicial Watch I & Judicial Watch II*

In August 2019, after Judge Kollar-Kotelly denied Klayman's post-trial motions and his motion to reconsider those rulings, Klayman appealed to the D.C. Circuit. See No. 6-cv-670-CKK, ECF No. 613 (D.C. Cir. Case No. 19-7105). He also filed a motion in the district court to stay enforcement of the judgment pending appeal, which was denied. Id., ECF No. 609, 614.

Simultaneously, Klayman filed a separate action seeking relief from the judgment against him under Rule 60. Klayman v. Judicial Watch, Inc., No. 19-cv-02604, 2021 WL 602900 at *2

(D.D.C) ("Judicial Watch II").  Klayman sought vacatur of the Judicial Watch I judgment.  Id. at *5.  The case was assigned to The Honorable Tanya S. Chutkan, whom Klayman also names as a defendant in the present lawsuit.  Judge Chutkan initially stayed the matter pending the outcome of Klayman's appeal, but then dismissed the action *sua sponte* in February 2021, finding that he had failed to state a claim for relief under Rule 60(b) or (d), and failed to plead facts supporting his allegation of fraud on the court.  Id. at *7-10.  Klayman appealed that decision, and the D.C. Circuit affirmed without argument in June 2021.  See Docket, No. 19-cv-02604 (TSC) (D.D.C), ECF No. 14; Docket, No. 21-5076 (D.C. Cir.), Document # 1904268 (June 29, 2021) (unpublished disposition).

On July 30, 2021, the D.C. Circuit issued its opinion in the original Judicial Watch Appeal.  See Klayman, 6 F.4th at 1301.  Klayman raised a host of issues before the Court of Appeals, including challenges to Judge Kollar-Kotelly's pretrial and evidentiary rulings, her sanctions order, her grant of partial summary judgment to Judicial Watch, the jury instructions she used, and her entry of judgment against him.  Id.  The Court of Appeals affirmed in full, finding no error in Judge Kollar-Kotelly's handling of the case.  Id. at 1321.  Klayman filed a petition for rehearing en banc, which was denied on September 15, 2021.

    3.  *Judicial Watch III*

Not a week later, Klayman filed the present action against the sixteen judges of the D.C. Circuit and Judges Kollar-Kotelly and Chutkan.  Klayman alleges Judge Kollar-Kotelly "committed numerous highly prejudicial, intentional, and/or reckless manifest errors which resulted in a highly flawed and outrageous jury verdict against Mr. Klayman."  Compl. ¶ 24.  He claims that Judge Chutkan "collude[d]" with Judge Kollar-Kotelly to deny him "his constitutional and other legal rights."  Compl. ¶ 44.  And he asserts that the D.C. Circuit

3

"mistakenly, intentionally, and/or recklessly failed to reverse clear errors by Judge Kotelly, . . . [and] made new highly prejudicial errors of its own." Id. ¶ 27. He submits that these errors were "clear cut violations of [his] sacrosanct due process rights, as guaranteed to him under the Fifth and Fourteenth Amendments." Id. ¶ 35. Klayman also contends these alleged errors violated his First Amendment rights. Id. ¶ 63–65. As redress for these claimed injuries, Klayman seeks "judgment against each of the Defendants, jointly and severally, for declaratory and preliminarily and permanent injunctive relief." Compl. VI. He also prays that the judgment against him in Judicial Watch I be vacated, "and this matter be reheard and retried before an unbiased and neutral judge." Id. ¶ 67.

## II. Legal Standards

The Court "may *sua sponte* dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) without notice where it is patently obvious that the plaintiff cannot possibly prevail based on the facts alleged in the complaint." Rollins v. Wackenhut Servs., Inc., 703 F.3d 122, 127 (D.C. Cir. 2012) (internal quotation marks omitted); see also Baker v. Dir., U.S. Parole Comm'n, 916 F.2d 725, 726 (D.C. Cir. 1990) (to do otherwise would "lead to a waste of judicial resources . . . in cases where the plaintiff has not advanced a shred of a valid claim"); Best v. Kelly, 39 F.3d 328, 330–31 (D.C. Cir. 1994) (a court may *sua sponte* dismiss a complaint under Rule 12(b)(6) when a complaint is "legally frivolous").

A complaint fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). When considering dismissal under Rule 12(b)(6), the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the

4

facts alleged." Am. Nat'l Ins. Co. v. F.D.I.C., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted). Additionally, a court may take judicial notice of other court proceedings and the records from those proceedings. See Luke v. United States, No. 13-cv-5169, 2014 WL 211305, at *1 (D.C. Cir. Jan. 13, 2014) (citing Dupree v. Jefferson, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981)). Further, "when jurisdictional questions arise in a suit, courts are obligated to consider [those issues] sua sponte." Worley v. Islamic Republic of Iran, 75 F. Supp. 3d 311, 323 (D.D.C. 2014).

Although *pro se* complaints are "held to less stringent standards than formal pleadings drafted by lawyers," they must still "plead factual matter that permits the court to infer more than the mere possibility of misconduct." Abdelfattah v. U.S. Dep't of Homeland Sec., 787 F.3d 524, 533 (D.C. Cir. 2015) (citations omitted).[1] "Likewise, although a pro se complaint must be construed liberally, the complaint must still present a claim on which the Court can grant relief." Smith v. Scalia, 44 F. Supp. 3d 28, 36 (D.D.C. 2014) (internal quotation marks omitted).

### III. Analysis

#### A. Judicial Immunity

"Judges enjoy absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of all jurisdiction." Sindram v. Suda, 986 F.2d 1459, 1460 (D.C. Cir. 1993). Judicial immunity "extends even to actions that are allegedly malicious or corrupt." Sibley v. Roberts, 224 F. Supp.

---

[1] The D.C. Circuit has not yet decided whether the more liberal reading applies to a complaint "when the *pro se* plaintiff is a practicing lawyer like Klayman." Klayman v. Zuckerberg, 753 F.3d 1354, 1357 (D.C. Cir. 2014). The Court need not reach that question here because it would dismiss the case even under the most generous reading of the complaint. Id.; see also Richards v. Duke Univ., 480 F. Supp. 2d 222, 235 (D.D.C. 2007).

5

3d 29, 37 (D.D.C. 2016); see also Mireles v. Waco, 502 U.S. 9, 11 (1991) ("Judicial immunity is not overcome by allegations of bad faith or malice."). Put simply, the only remedy for a judge's alleged past mishandlings of a case is "an appeal . . . not a lawsuit against the judge[]." Smith, 44 F. Supp. 3d at 42.[2]

Klayman does not seek money damages in his complaint. See Compl. IV. However, each of the acts that Klayman claims violated his rights are *past* judicial decisions of the defendants. For example, he claims Judge Kollar-Kotelly violated his Due Process rights during Judicial Watch I by, among other things, "[a]llowing highly prejudicial, inflammatory statements and an irrelevant court order into evidence, in contradiction of . . . the Federal Rules of Evidence," "grant[ing] partial summary judgment to Judicial Watch with regard to Mr. Klayman's (1) Lanham Act claims, (2) rescission claim, and (3) defamation claims," failing to provide certain jury instructions, failing to remit the award against him, and "[e]ntering judgment on the jury verdict" against him. Compl. ¶ 24(a)–(i). He further contends that the judges of the D.C. Circuit compounded these errors by affirming the jury verdict and denying his petition for rehearing en banc. Compl. ¶¶ 27, 33, 36.

A lawsuit challenging the past decisions of judges taken in their judicial capacities is barred by judicial immunity. See Smith, 44 F. Supp. 3d at 40 ("[J]udges are absolutely immune

---

[2] See, also, e.g., Moore v. Burger, 655 F.2d 1265, 1266 (D.C. Cir. 1981) (affirming *sua sponte* dismissal of complaint against the justices of the Supreme Court); Jafari v. United States, 83 F. Supp. 3d 277, 278 (D.D.C. 2015) (dismissing *sua sponte* a claim against the judges of the Fourth Circuit under the Federal Tort Claims Act as barred by judicial immunity); Yi Tai Shao v. Roberts, No. CV 18-1233 (RC), 2019 WL 249855, at *11 (D.D.C. Jan. 17, 2019), aff'd sub nom. Shao v. Roberts, No. 19-5014, 2019 WL 3955710 (D.C. Cir. July 31, 2019) (*sua sponte* dismissing claims for money damages against two California judges as barred by judicial immunity).

from lawsuits predicated on acts taken in their judicial capacity.") (citing Forrester v. White, 484 U.S. 219, 225 (1988)); see also Caldwell v. Kagan, 777 F. Supp. 2d 177, 179 (D.D.C.), aff'd, 455 F. App'x 1 (D.C. Cir. 2011) ("Plaintiff's claims against the district and court of appeals judges are patently frivolous because federal judges are absolutely immune from lawsuits predicated, as here, for their official acts."). The rationale that dictates judicial immunity from damages also "dictate[s] that immunity be conferred in suits . . . in which a party seeks an injunction compelling a judge to alter an earlier decision." Lewis v. Green, 629 F. Supp. 546, 553 (D.D.C. 1986). "While courts do distinguish between equitable and monetary relief in this context, it is well established that judicial immunity bars claims . . . for retrospective declaratory relief of a violation of federal law." Jenkins v. Kerry, 928 F. Supp. 2d 122, 135 (D.D.C. 2013) (citing Green v. Mansour, 474 U.S. 64, 73 (1985)).

Klayman's claims are therefore barred by absolute judicial immunity, and he "thus fails to state a claim upon which relief may be granted." Caldwell, 455 F. App'x 1.

B. Declaratory and Injunctive Relief.

Even if judicial immunity did not apply, this Court does not have the power to grant the type of relief Klayman seeks. The Court therefore lacks subject matter jurisdiction over his claims.

This Court lacks subject matter jurisdiction when a matter does not present a "case or controversy" within the meaning of Article III. Medelius Rodriguez v. U.S. Citizenship & Immigr. Serv., 605 F. Supp. 2d 142, 145 (D.D.C. 2009); see Cherry v. F.C.C., 641 F.3d 494, 497 (D.C. Cir. 2011) ("Article III standing is a jurisdictional requirement that cannot be waived by the parties."). To demonstrate a redressable injury for the purpose of Article III standing, a plaintiff "must show in the first instance that the court is capable of granting the relief they

seek." McNeil v. Harvey, No. CV 17-1720 (RC), 2018 WL 4623571, at *5 (D.D.C. Sept. 26, 2018); see also Swan v. Clinton, 100 F.3d 973, 976 (D.C. Cir. 1996) ("redressability" includes the question of "whether a federal court has the power to grant [the plaintiff's requested] relief").

As noted above, Klayman seeks a declaratory judgment as well as preliminary and permanent injunctive relief against the defendants, who are sitting federal judges of the D.C. Circuit Court of Appeals and District Court for the District of Columbia. A request for injunctive and declaratory relief may not be barred by judicial immunity in all instances. See Pulliam v. Allen, 466 U.S. 522, 540 (1984). Here, however, Klayman seeks a judgment declaring the past judicial decisions of the defendants illegal and an order vacating the prior judgment against him. Even if Klayman could establish his entitlement to such relief, neither this Court nor any other federal district court would have the power to grant it.

It is "axiomatic that a lower court may not order the judges or officers of a higher court to take an action." In re Marin, 956 F.2d 339, 340 (D.C. Cir. 1992). "[I]t is also well established that federal district courts do not have jurisdiction to reconsider decisions of other federal courts." Yi Tai Shao, 2019 WL 249855, at *14. This Court "is a trial level court in the federal judicial system," and therefore "generally lacks appellate jurisdiction over other judicial bodies, and cannot exercise appellate mandamus over other courts." United States v. Choi, 818 F.Supp.2d 79, 85 (D.D.C. 2011). Accordingly, "[t]his Court cannot compel . . . other Article III judges in this or other districts or circuits to act." Sibley v. U.S. Supreme Ct., 786 F. Supp. 2d 338, 345 (D.D.C. 2011); see also Sanders v. United States, 184 F. App'x 13, 14 (D.C. Cir. 2006); Lewis, 629 F. Supp. at 553 (district court lacks the authority to compel another district court to vacate an earlier decision).

As a federal district court, this Court lacks the power to void other federal courts' orders through a collateral attack. "[It] is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected." Celotex Corp. v. Edwards, 514 U.S. 300, 313 (1995). The relief Klayman seeks—vacatur of the prior award against him and an injunction against the judges of the D.C. Circuit—is simply not relief this Court has the power to grant.

Klayman's request for a declaratory judgment fares no better. "Declaratory relief against a judge for final actions taken within his or her judicial capacity is . . . available by way of direct appeal of the judge's order." Jenkins, 928 F. Supp. 2d at 135; see also Lewis, 629 F. Supp. at 553 ("Challenges to rulings made during the course of judicial proceedings should be made by appeal in those cases."). Because "declaratory relief against a judge for final actions taken within his or her judicial capacity is . . . available by way of a direct appeal of the judge's order," parties cannot seek "a declaratory judgment challenging a ruling in a separate action." Sibley, 224 F. Supp. 3d at 38.³ Such suits are "improper collateral attacks." Id.; see also McNeil, 2018 WL 4623571, at *5 ("Federal district courts lack the power to void other federal courts' orders through a collateral attack."). To obtain the declaratory judgment Klayman seeks, his path was an appeal to the D.C. Circuit, and following that, a petition for writ of certiorari to the Supreme

---

³ Klayman's request for a declaratory judgment would fail on the merits anyway. "A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act." Klayman v. Blackburne-Rigsby, No. CV 21-0409 (ABJ), 2021 WL 2652335, at *3 (D.D.C. June 28, 2021). Here, Klayman seeks a declaratory judgment about the past acts of the defendants; he identifies no ongoing or future violation of his rights, so his request for a declaratory judgment must therefore fail. And "the Declaratory Judgment Act neither expands a court's jurisdiction nor creates new substantive rights." Thomas v. Wilkins, 61 F. Supp. 3d 13, 21 (D.D.C. 2014).

Court.[4]  This Court is not on that path, so there is nothing this Court can do that would redress Klayman's claimed injuries.

Klayman was certainly aware of this Court's inability to grant him the equitable relief he seeks when he filed this complaint, because the D.C. Circuit has informed him of this principle not once, but twice.  In 2012, Klayman sued Judge Kollar-Kotelly while the Judicial Watch I litigation was still in progress.  The Honorable Richard J. Leon dismissed the complaint, and the D.C. Circuit affirmed, stating "this court has concluded that one district court does not have jurisdiction to review the decisions of another district court or federal appellate court."  Klayman v. Kollar-Kotelly, No. 12-5340, 2013 WL 2395909, at *1 (D.C. Cir. May 20, 2013).  And, in its affirmance of Judge Chutkan's decision dismissing his complaint in Judicial Watch II, the D.C. Circuit explained once again that a "district court . . . lacks jurisdiction to vacate prior orders of another district court."  Klayman v. Jud. Watch, Inc., 851 F. App'x 222 (D.C. Cir. 2021).

Accordingly, Klayman has failed to demonstrate a redressable injury for the purpose of Article III standing because this Court lacks the power to grant the relief he seeks.

C.  Res Judicata

Even if Klayman was able overcome the jurisdictional bars described above, his claims would be barred by *res judicata*.

"The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues."  I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co., 723 F.2d 944, 946 (D.C. Cir. 1983).  A final judgment on the merits of an action "precludes the parties or their

---

[4] The complaint indicates Klayman has not yet filed a certiorari petition, but that he intends do so in the future.  Compl. ¶ 36.

privies from relitigating claims that were or could have been raised in that action." Barroca v. Hurwitz, 342 F. Supp. 3d 178, 195 (D.D.C. 2018) (internal quotation marks omitted).

"Res judicata has two distinct aspects—claim preclusion and issue preclusion (commonly known as collateral estoppel)—that apply in different circumstances and with different consequences to the litigants." Sheppard v. District of Columbia, 791 F. Supp. 2d 1, 4 (D.D.C. 2011). "Under issue preclusion or collateral estoppel, 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" Id. at 5 (quoting Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992)). Therefore, "issue preclusion prevents the relitigation of any issue that was raised and decided in a prior action," even if one party to the original action is not a party to the present suit. Ficken v. Golden, 696 F. Supp. 2d 21, 32 (D.D.C. 2010); see also Novak v. World Bank, 703 F.2d 1305, 1309 (D.C. Cir. 1983) (noting that the Supreme Court has "virtually eliminated the mutuality requirement for collateral estoppel").

The D.C. Circuit has held that *res judicata* may be raised by a district court *sua sponte* "because of the policy interest in avoiding unnecessary judicial waste." Jenson v. Huerta, 828 F. Supp. 2d 174, 179 (D.D.C. 2011); see also Stanton v. D.C. Ct. of Appeals, 127 F.3d 72, 77 (D.C. Cir. 1997) ("As res judicata belongs to courts as well as to litigants, even a party's forfeiture of the right to assert it . . . does not destroy a court's ability to consider the issue sua sponte.").

There can be no doubt that the issues Klayman raises in this complaint have already been raised and decided in Judicial Watch I. Although Klayman styles his suit as one to vindicate a deprivation of his due process rights, his specific allegations of wrongdoing all stem from previously adjudicated judicial decisions of either the district or appellate court. For example, he

11

challenges Judge Kollar-Kotelly's evidentiary rulings and jury instructions in Judicial Watch I, Compl. ¶¶ 24–26, and the D.C. Circuit's affirmance of those rulings on appeal, Compl. ¶¶ 27-29. Klayman alleges that he set forth all these errors "in detail" in his opening and reply brief before the D.C. Circuit in the Judicial Watch Appeal. Compl. ¶¶ 24–25. He attaches those briefs as exhibits to his complaint, along with his petition for rehearing. Id., Ex. 1, 2.

These issues have been fully litigated to a final judgment on the merits. In the Judicial Watch I appeal the D.C. Circuit considered, and rejected, each of the issues Klayman now raises in his complaint. For example:

- Klayman alleges Judge Kollar-Kotelly erred by "[e]ntering an overly broad, draconian sanctions order" against him. Compl. ¶ 24(b). The D.C. Circuit held Judge Kollar-Kotelly "did not abuse [her] discretion when [she] sanctioned Klayman." Klayman, 6 F.4th at 1311; see also id. at 1313 ("[T]he district court did not abuse its discretion when it sanctioned Klayman for his inadequate pretrial statement.").

- Klayman claims Judge Kollar-Kotelly violated the Constitution when she granted partial summary judgment to Judicial Watch. Compl. ¶¶ 24(c), (d). The D.C. Circuit considered this issue *de novo*, 6 F.4th at 1314, and affirmed the grant of partial summary judgment on each of the relevant claims and Judicial Watch's counterclaim. Id. at 1314–17.

- Klayman asserts Judge Kollar-Kotelly instructed the jury erroneously. Compl. ¶¶ 24(e), (g). The D.C. Circuit found no error in the instructions provided, and that the district court correctly refused to give the "outlandish" instructions Klayman sought. 6 F.4th at 1318–20.

- Klayman additionally challenges the verdict against him and Judge Kollar-Kotelly's failure to remit the damages award. Compl. ¶¶ 24(h)–(i). The D.C. Circuit affirmed the judgment in all respects. 6 F.4th at 1320–21.

Klayman also claims Judge Chutkan "acted in concert to deny Mr. Klayman his constitutional and other legal rights" based on her decision to dismiss his complaint in Judicial Watch II. Compl. ¶ 44. This decision has also been affirmed by the D.C. Circuit on appeal. See Klayman, 851 F. App'x 222.

It is clear, then, that the issues outlined in Klayman's complaint have already been "raised and decided in a prior action," Ficken, 696 F. Supp. 2d at 32, and Klayman is therefore precluded from relitigating them here, Sheppard, 791 F. Supp. 2d at 5. Given this Court's interest in "conserve[ing] judicial resources, avoid[ing] inconsistent results, engender[ing] respect for judgments of predictable and certain effect, and prevent[ing] serial forum-shopping and piecemeal litigation," id., the Court sees it fit to invoke issue preclusion *sua sponte* in this instance.

### D. Failure to State a Claim

Klayman's complaint must also be dismissed for the independent reason that it fails to state a claim for relief. As described above, a court may *sua sponte* dismiss a complaint under Rule 12(b)(6) when a complaint is "legally frivolous," or as factually frivolous when the allegations are "fanciful." Best, 39 F.3d at 330–31. Litigants must "plead factual matter that permits the court to infer more than the mere possibility of misconduct." Abdelfattah v. U.S. Dep't of Homeland Sec., 787 F.3d 524, 533 (D.C. Cir. 2015).

Klayman brings three counts. He alleges the defendants denied him "meaningful and actual access to the courts to litigate his claims" in violation of his right to Due Process under the Fifth and Fourteenth Amendments. Compl. ¶¶ 35, 50–55, 56–61 (Counts I & II). He also avers that the decisions against him were designed to bankrupt him and thereby shield the defendants from his criticism, in violation of the First Amendment. Compl. ¶¶ 62–67 (Count III).

Aside from recounting the tortuous history of this litigation, Klayman provides astonishingly few factual allegations in support of these causes of action. He alleges that the three judges presiding over the Judicial Watch I appeal, Judges Rao, Wilkins, and Silberman, colluded with Judge Kollar-Kotelly and that the opinion issued by the panel "was an attempt [by

13

Judge Rao] to protect a fellow female jurist." Compl. ¶ 27. He also claims the en banc court "simply rubber-stamped" the opinion because his petition for rehearing was denied in eleven days. Compl. ¶¶ 38-41. Finally, Klayman maintains that these decisions were motivated by "personal animus and dislike for Mr. Klayman," which he claims is a result of his highly critical book about the D.C. Circuit. Compl. ¶ 45.

The Court "does not have to accept asserted inferences or conclusory allegations that are unsupported by facts set forth in plaintiff's complaint." Richards, 480 F. Supp. 2d at 235. Allegations "need only be accepted to the extent that 'they plausibly give rise to an entitlement to relief.'" Baker v. Gurfein, 744 F. Supp. 2d 311, 315 (D.D.C. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). Klayman's allegations of collusion and judicial bias are "so attenuated and unsubstantial as to be absolutely devoid of merit." Hagans v. Lavine, 415 U.S. 528, 536 (1974). Thus, even assuming the truth of these allegations, it is "patently obvious" that Klayman has not stated a claim under either the Due Process Clause or the First Amendment. Baker, 916 F.2d at 727.

E. Motion to Transfer Venue

Finally, Klayman has moved to transfer this case to an "unbiased and impartial venue," Mot. to Transfer at 1, ECF No. 4.[5] He proposes either the U.S. District Court for the Northern District of Texas or the U.S. District Court for the Southern District of Florida, both locations where Klayman is admitted to practice. Id. The Court will deny the motion.

---

[5] Klayman requested similar relief in this complaint. See Compl. ¶ 49; see also Docket, No. 21-cv-02473 (D.D.C), ECF No. 2 ("Mr. Klayman . . . respectfully requests that this case be transferred to a neutral jurisdiction, as set forth in his Pro Se Complaint.").

Although "the interest[s] of justice generally require transferring a case to the appropriate judicial district in lieu of dismissal," Abraham v. Burwell, 110 F. Supp. 3d 25, 30 (D.D.C. 2015), dismissal "is often appropriate when the outcome is foreordained . . . or the complaint has serious substantive problems," Fam v. Bank of Am. NA (USA), 236 F. Supp. 3d 397, 409 (D.D.C. 2017) (internal quotation marks omitted). Examples of cases where dismissal is appropriate include "cases where the plaintiff's claims would be procedurally barred by res judicata . . . or [if] transfer would be futile." Id. at 410; see also Lemon v. Kramer, 270 F. Supp. 3d 125, 140 (D.D.C. 2017) (dismissing rather than granting transfer where the complaint failed to state a claim). Because of the "obvious substantive problems" with Klayman's complaint, outlined above, the Court finds that transfer is not warranted. Id.

Furthermore, Klayman has not established that transfer to the venues he suggests would be proper. Under 28 U.S.C. § 1404(a), a district court "may transfer any civil action to any other district or division *where it might have been brought*." (emphasis added). This action likely could *not* have been brought in either the Southern District of Florida or the Northern District of Texas, because nothing in the complaint or in Klayman's transfer motion suggests that those courts would have personal jurisdiction over the defendants, whom Klayman alleges are all citizens of the District of Columbia. See Compl. ¶¶ 4-21. None of the events alleged in the complaint occurred anywhere besides the District of Columbia. See 28 U.S.C. § 1391(b), (e)(1). Accordingly, venue would not be proper in the districts Klayman proposes, and this Court cannot transfer the case to an improper venue. See Hoffman v. Blaski, 363 U.S. 335, 343 (1960); Lamont v. Haig, 590 F.2d 1124, 1132 (D.C. Cir. 1978) (a prerequisite to transfer under § 1404(a) is proper venue "in the transferee district with respect to every defendant and each claim for relief"); Pinson v. U.S. Dep't of Just., 74 F. Supp. 3d 283, 295 (D.D.C. 2014) (declining to

15

transfer case "because the transferee district might assert that it lacks personal jurisdiction" over federal defendants sued in their individual capacities).

Klayman additionally requests transfer under 28 U.S.C. § 455, which provides for the disqualification of a judge under certain circumstances. Mot. for Transfer at 3. Klayman alleges partiality on account of the fact that the undersigned is a member of the Court where two of the named defendants also sit as judges. This allegation is not enough to lead a "reasonable, informed observer" to question the impartiality of the undersigned. United States v. Microsoft Corp., 253 F.3d 34, 115 (D.C. Cir. 2001).

"Judicial impartiality is presumed." First Interstate Bank of Arizona, N.A. v. Murphy, Weir & Butler, 210 F.3d 983, 987 (9th Cir. 2000). Recusal is warranted only if a "reasonable and informed observer would question the judge's impartiality." United States v. Cordova, 806 F.3d 1085, 1092 (D.C. Cir. 2015). Said reasonable observer "must assume that judges are ordinarily capable of setting aside their own interests and adhering to their sworn duties to faithfully and impartially discharge and perform all duties incumbent upon them." Armenian Assembly of Am., Inc. v. Cafesjian, 783 F. Supp. 2d 78, 91 (D.D.C. 2011) (internal quotation marks omitted). Therefore, "conclusory, unsupported or tenuous allegations" are insufficient for recusal. In re Kaminski, 960 F.2d 1062, 1065 n.3 (D.C. Cir. 1992).

Klayman has not provided anything beyond "conclusory, unsupported or tenuous allegations" of bias. Id. He has not provided evidence of "an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute," Osei v. Standard Chartered Bank, No. CV 18-1530 (RC), 2019 WL 917998, at *4 (D.D.C. Feb. 25, 2019), aff'd sub nom. Akwasi Boakye Osei v. Standard Chartered Bank, No. 19-7018, 2019 WL 2563460 (D.C. Cir. June 4, 2019), or, as would be necessary under 28 U.S.C. § 455(b)(1), actual

"evidence of the judge's extra-judicial conduct or statements that are plainly inconsistent with his responsibilities as an impartial decisionmaker." Jenkins v. Sterlacci, 849 F.2d 627, 634 (D.C. Cir. 1988). In fact, Klayman points to nothing besides the undersigned's status as a judge of this Court. This is plainly not enough. Accordingly, the Court will deny his motion for transfer of venue.

### IV. Conclusion

As the voluminous record of court proceedings shows, Mr. Klayman has had ample opportunity to litigate his dispute with Judicial Watch. And he has done so vigorously. His lack of success does not work a violation of his constitutional rights, however. Nor does it offer a ticket back to this Court. "Regardless of how the plaintiff seeks to characterize his challenge, he is asking this Court to do nothing other than second-guess an order issued by another judge on this Court, which this Court cannot do." Sibley, 224 F. Supp. 3d at 38.

For the foregoing reasons, the Court will dismiss Klayman's suit, in its entirety, with prejudice. A separate Order will follow.

CHRISTOPHER R. COOPER
United States District Judge

Date: October 25, 2021